# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

MYCHAEL POWELL,

     Plaintiff,

 v.

AMERICAN AIRLINES,

     Defendant.

Civil Action No. 17-1740 (CKK)

## MEMORANDUM OPINION

 Mychael Powell ("Plaintiff") brings this employment discrimination action under Title VII of the Civil Rights Act of 1964, *see* 42 U.S.C. § 2000e *et seq.* ("Title VII"), the Age Discrimination in Employment Act of 1967, *see* 29 U.S.C. § 621 *et seq.* ("ADEA"), and the Americans with Disabilities Act, *see* 42 U.S.C. 12101 *et seq.* ("ADA"). This matter is before the Court on Defendant American Airlines, Inc.'s Motion for Summary Judgment, ECF No. 40. For the reasons discussed below, the Court grants the motion.

## I. BACKGROUND

 Plaintiff, an African American male, Compl. (ECF No. 1) at 1, "has been diagnosed with a Psychiatric Disability (stress disorder)," *id*. at 2; Pl.'s Opp'n (ECF No. 43) at 1. From August 29, 2016 to May 5, 2017, American Airlines, Inc. ("Defendant" or "the Company") employed Plaintiff as a Customer Service Manager ("CSM") at Ronald Reagan Washington National Airport. Def. American Airlines, Inc.'s Statement of Undisputed Material Facts (ECF No. 40-2,

"SMF") ¶ 1.  Among other duties, the CSM managed Defendant's customer service employees at National Airport.  *Id*. ¶ 2.

Defendant "expects all its employees, and particularly its managers, to conduct themselves with honesty and integrity."  *Id*. ¶ 3.  Its "Rules of Conduct specifically prohibit misrepresentation of facts and dishonesty of any kind in relation with the Company."  *Id*. ¶ 4; *see generally* Mounivong Decl (ECF No. 40-3), Ex. A.

Marissa Garcia ("Garcia") held the position of Manager on Duty in the Customer Care Department at National Airport.  Garcia Decl. (ECF No. 40-4) ¶ 1.  She "led a team of 10 [CSMs] and approximately 300 frontline employees."  *Id*. ¶ 2.  She was the Manager on Duty on April 9, 2017, and Plaintiff reported directly to her.  *Id*. ¶ 3.

"A jetbridge is the enclosed, moveable connector between the terminal and the aircraft" through which passengers board and deplane.  SMF ¶ 7.  When an aircraft reaches the terminal, an airline employee maneuvers a jetbridge so that it is flush with the aircraft.  *Id*. ¶ 8.  On April 9, 2017, Republic Airlines, a regional carrier with which Defendant had a service agreement, notified Defendant that one of its aircraft arriving at Gate 44C was damaged by a jetbridge.  *See id*. ¶¶ 5-6.

Garcia instructed Plaintiff to investigate the incident and to identify the customer service employee who met the Republic flight and operated the jetbridge.  SMF ¶¶ 10-11.  When Garcia spoke with Plaintiff later that day, Plaintiff "claimed to not know who met the flight."  *Id*. ¶ 12.  Garcia then instructed Plaintiff "to determine who met the flight and complete an incident report summarizing his findings."  *Id*. ¶ 13.

Plaintiff submitted a report to Garcia on April 10, 2017.  *Id.* ¶ 14; *see generally* Garcia Decl., Ex. A.  His report indicated that the Republic flight arrived at Gate 44 at 2:18 p.m. on April 9, 2017.  SMF ¶ 14.  Plaintiff asserted that the aircraft had been damaged prior to its arrival at National Airport.  *Id.* ¶ 15.  The report did not identify the employee who met the inbound flight, *id.* ¶ 16, and when Garcia again asked Plaintiff who met the flight, Plaintiff claimed he did not know, *id.* ¶ 17.

In an effort to identify the employee who operated the jetbridge, Garcia sought the assistance of Robert Morley ("Morley"), Corporate Security-Global Investigations Senior Investigator.  *Id.* ¶ 18; Garcia Decl. ¶ 15.  Morley "reviewed video of Gate 44C as well as badge swipe data to determine who accessed the secure door to the gate."  Mounivong Decl.  ¶ 6; *see generally id.*, Ex. B.  He "reported that on April 9, 2017, [Plaintiff] opened the door to Gate 44C at 2:15pm and entered the jetbridge," SMF ¶ 20, and exited the jetbridge at 2:19 p.m., *see id.* ¶¶ 20, 22.  Although the secured door remained open during that time, no one else entered the jetbridge.  *Id.* ¶ 21.  Based on video and badge swipe records, Morley found that "no one other than [Plaintiff] accessed or entered the jetbridge at Gate 44C between 1:56 pm and 2:30 pm" on April 9, 2017.  *Id.* ¶ 23.

On April 18, 2017, Human Resources Specialist Ubon Mounivong and Manager on Duty Chase Pierson met with Plaintiff.  *Id.* ¶ 24; Mounivong Decl. ¶ 11.  Mounivong and Pierson "asked [Plaintiff] to describe what happened" and Plaintiff responded that "he did not operate the jetbridge to meet the aircraft."  Mounivong Decl. ¶ 11; *see* SMF ¶ 25.  And "[e]ven after Mounivong and Pierson disclosed . . . evidence . . . that [Plaintiff] was the only employee who

accessed the jetbridge around the time of the incident, [Plaintiff] insisted it was not him."  SMF

¶ 26.  Mounivong "did not find [Plaintiff's] statements to be credible."  Mounivong Decl. ¶ 13.

On May 5, 2017, Garcia and Manager on Duty Jeff Fontenot met with Plaintiff.  SMF

¶ 28.  They "explained to [Plaintiff] that the badge swipe data and video footage indicated that he

was the only person who could have operated the jetbridge at the time in question."  *Id*. ¶ 29.

Still, Plaintiff denied involvement.  *Id*. ¶ 30.  Garcia concluded that Plaintiff "had not been

honest during the Company's investigation of the incident."  Garcia Decl. ¶ 17.

Effective May 5, 2017, Defendant terminated Plaintiff's employment.  SMF ¶ 32.  In

relevant part, its written notice read:

> On April 9, 2017 you were the CSM on Duty in North Pier
> (Terminal C).  You were notified to investigate . . .  damage . . . for
> an inbound flight that arrived on Gate 44.  The investigation you
> completed was incomplete and did not specify who the agent was as
> the time the aircraft arrived.  You stated that you were not able to
> get this information because the information was no longer in the
> system after 48 hours.  However, it was later discovered through
> management's investigation that you were the individual who met
> the aircraft when it arrived.  The evidence uncovered during the
> investigation supports that you were the one who operated the
> jetbridge and caused the damage to the aircraft.  When your manager
> asked you if you operated the jetbridge, your response was "No I did
> not."  You stated you did go all the way down the jetbridge,
> however, you were not the one who operated it or met the aircraft.
> *Your statements made during the investigation were deemed not
> credible.*  This is not the behavior that American Airlines expects or
> condones from a member of management.

Garcia Decl., Ex. B (emphasis added).

Plaintiff sought reinstatement and sent Defendant a letter on May 8, 2017.  SMF ¶ 33.

He stated that, "[b]ased on [Defendant's] evidence," he "agree[d] that [he] was the person that

met the inbound flight at gate 44."  Mounivong Decl., Ex. C.  However, he maintained that the

4

damage occurred prior to the Republic flight's arrival, and attributed his own conduct to stress. *Id.*, Ex. C; *see* SMF ¶¶ 33-34.

## II. DISCUSSION

### A.  Summary Judgment Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted).  To defeat summary judgment, the non-moving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal quotation marks omitted).

The mere existence of a factual dispute is insufficient to preclude summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).  A dispute is "genuine" only if a reasonable fact-finder could find for the non-moving party; a fact is "material" only if it is capable of affecting the outcome of the litigation.  *Id.* at 248; *Laningham v. U.S. Navy*, 813 F.2d 1236, 1241 (D.C. Cir. 1987).  In assessing a party's motion, the court must "view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the summary judgment motion.'"  *Scott v. Harris*, 550 U.S. 372, 378 (2007) (alterations omitted) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam)).

**B. Plaintiff's Response to Defendant's Summary Judgment Motion**

The Court's October 2, 2019 Order (ECF No. 38) advised the parties of their obligation to comply fully with Local Civil Rule 7(h). Further, the Court advised that the party responding to a statement of material facts must respond to each paragraph with a correspondingly numbered paragraph indicating whether that paragraph is admitted or denied. In addition, the Court's November 2, 2019 Order (ECF No. 41) advised Plaintiff that the Court would treat the moving party's assertions of fact as true unless he submits his own affidavits or documentary evidence to contradict them.

Plaintiff's response to Defendant's summary judgment is deficient in two respects. First, his response (ECF No. 43) to Defendant American Airlines, Inc.'s Statement of Undisputed Material Facts (ECF No. 40-2) does not comply with Local Civil Rule 7(h) and the Court's October 2, 2019 Order. Second, his response consists of unsupported assertions, *see generally* Pl.'s Opp'n, to which he attaches two exhibits: a performance appraisal dated December 31, 2016, *see id.* (ECF No. 43 at 4-6), and some sort of diagram, *see id.* (ECF No. 43 at 8), with no explanation of their relevance. Accordingly, given Plaintiff's failure to demonstrate a genuine dispute as to any material fact, the Court treats Defendant's assertions of fact as admitted.

**C. Discrimination Based on Race and Sex**

An employer may not "discharge any individual . . . because of [his] race [or] sex[.]" 42 U.S.C. § 2000e-2(a)(1). In situations where a plaintiff cannot present direct evidence of discrimination, the Court assesses his claims under the "framework originally set forth by the Supreme Court for Title VII claims in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802– 03 (1973)." *Hicks v. District of Columbia*, 306 F. Supp. 3d 131, 143 (D.D.C. 2018); *see*

*Figueroa v. Pompeo*, 923 F.3d 1078, 1086 (D.C. Cir. 2019) ("Employees often use the three-step *McDonnell Douglas* method of proof when they have only circumstantial evidence of improper intent.").  "Under *McDonnell Douglas*, the plaintiff has the initial burden of production to establish a prima facie case of discrimination; if [he] does, then the employer must articulate a legitimate, non-discriminatory reason for its action; and if it does, then the plaintiff must receive an opportunity to show that the employer's reason was a pretextual cover for discrimination." *Wang v. Washington Metro. Area Transit Auth.*, 206 F. Supp. 3d 46, 64 (D.D.C. 2016) (citing *McDonnell Douglas*, 411 U.S. at 802-05) (additional citations omitted).

On summary judgment, however, if the employer puts forth a "legitimate, non-discriminatory reason" for its decision, "the district court must resolve one central question: Has the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the employee on the basis of race [or] sex[?]" *Brady v. Office of the Sergeant at Arms*, 520 F.3d 490, 494 (D.C. Cir. 2008) (citations omitted); *see DeJesus v. WP Co. LLC*, 841 F.3d 527, 532-33 (D.C. Cir. 2016).

At this juncture, a plaintiff must produce "sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the plaintiff on a prohibited basis." *Adeyemi v. District of Columbia*, 525 F.3d 1222, 1226 (D.C. Cir. 2008) (citing *Brady*, 520 F.3d 494).  "[I]n light of the total circumstances of the case [the Court asks] whether the jury could infer discrimination from the combination of (1) the plaintiff's prima facie case; (2) any evidence the plaintiff presents to attack the employer's proffered explanation for its actions; and (3) any

further evidence of discrimination that may be available to the plaintiff . . . or any contrary evidence that may be available to the employer." *Nurriddin v. Bolden*, 818 F.3d 751, 759 (D.C. Cir. 2016) (citations and internal quotation marks omitted).

### 1. Plaintiff's Prima Facie Case

"The prima facie case under *McDonnell Douglas* . . . is an evidentiary standard, not a pleading requirement." *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 510 (2002). A plaintiff establishes a *prima facie* case of discrimination by showing that he suffered an adverse employment action because of his race or sex. *See Brady*, 520 F.3d at 493. Plaintiff, an African American male, is a member of a protected class who suffered an adverse employment action when Defendant terminated his employment. *See Tovihlon v. Allied Aviation, Inc.*, 323 F. Supp. 3d 6, 16 (D.D.C. 2018) (finding that "the only adverse employment action cited by the plaintiff which may be actionable under Title VII is his termination"). For purposes of this Memorandum Opinion, the Court presumes without concluding that an inference of discrimination can be drawn from the circumstances of Plaintiff's termination. But the Court need not linger over the strength of Plaintiff's prima facie case. On summary judgment Defendant asserts a non-discriminatory reason for Plaintiff's termination, and "the question whether the employee actually made out a prima facie case is 'no longer relevant[.]'" *Brady*, 520 F.3d at 493 (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 510 (1993)) (additional citation omitted); *Wheeler v. Georgetown Univ. Hosp.*, 812 F.3d 1109, 1114 (D.C. Cir. 2016) ("In reviewing a summary judgment motion where the defendant has proffered some legitimate reason for its adverse employment action . . . , we skip ahead to the third step in the test.").

8

### 2.  Proffered Reason for Terminating Plaintiff's Employment

The D.C. Circuit instructs that "an employer . . . must proffer admissible evidence showing a legitimate, nondiscriminatory, clear, and reasonably specific explanation for its actions." *Figueroa*, 923 F.3d at 1092.  The evidence it produces "must suffice to raise a triable issue of fact as to intentional discrimination and to provide the employee with a full and fair opportunity for rebuttal." *Id*.  If the employer offers "a vague reason," it essentially is "offering no reason at all." *Id*.  Here, Defendant meets its burden.

Defendant terminated Plaintiff's employment because "he was not honest during [its] investigation of the April 9, 2017 incident." Def.'s Mem. at 8.  "[A] partner airline notified [Defendant] that a jetbridge damaged its aircraft," *id*., upon its arrival at Gate 44C at 2:18 p.m. on April 9, 2017, *see* SMF ¶¶ 6, 14.  Manager on Duty Garcia assigned Plaintiff the task of investigating the incident, *id*. ¶ 10, and specifically instructed Plaintiff to identify the customer service employee who met the Republic flight, *id*. ¶ 11.  Twice Plaintiff told Garcia that he did not know who met the flight.  *See id*. ¶¶ 12, 17.  Despite Garcia's instruction to Plaintiff that he determine who met the Republic flight and to include this information in a written report, Plaintiff's report did not identify the employee.  *See id*. ¶¶ 13, 16.

Further investigation indicated that Plaintiff is the only employee who could have operated the jetbridge at the time the Republic flight arrived.  Video footage and badge swipe data showed that Plaintiff entered the jetbridge at 2:15 p.m., that no other employee entered the area around that time, and that Plaintiff exited the jetbridge at 2:19 p.m.  *See* SMF ¶¶ 19-23.  Even after management presented this information to Plaintiff, Plaintiff denied involvement.  *See id*. ¶¶ 25, 30.

Case 1:17-cv-01740-CKK   Document 45   Filed 06/26/20   Page 10 of 15

In relevant part, Defendant's Rules of Conduct provided, "Dishonesty of any kind in relation with the Company . . . will be grounds for dismissal[.]"  Mounivong Decl., Ex. A at 2. Neither Garcia nor Mounivong found Plaintiff's statements to be honest or credible.  *See* Garcia Decl. ¶ 17; Mounivong Decl. ¶ 13.  Accordingly, Defendant has proffered that it terminated Plaintiff's employment because the "statements [he] made during the investigation were deemed not credible."  Garcia Decl., Ex. B.

When the Court assesses whether an employer proffers a legitimate nondiscriminatory reason, it considers four factors:

> (1) whether the employer produced evidence that would be admissible at the summary-judgment stage; (2) whether the factfinder, if it believes the evidence, could reasonably find that the employer's action was motivated by a nondiscriminatory reason; (3) whether the employer's explanation is facially credible in light of the proffered evidence; and (4) whether the employer's evidence presents a clear and reasonably specific explanation such that the employee has a full and fair opportunity to attack the explanation as pretextual.

*Albert v. Perdue*, No. 17-CV-1572, 2019 WL 4575526, at *4 (D.D.C. Sept. 20, 2019) (quoting *Figueroa*, 923 F.3d at 1087-88) (citations and internal quotation marks omitted).  This Defendant produces evidence, principally the declarations of Garcia and Mounivong, which is admissible at the summary judgment stage.  If the declarants' statements were believed, a factfinder reasonably could find that Defendant's decision to terminate Plaintiff's employment was motivated by his lack of candor during its investigation of the jetbridge incident, not his race or sex.  In light of the proffered evidence, Defendant's explanation is facially credible, and Defendant's explanation is sufficiently clear and specific, such that Plaintiff has had a fair opportunity to challenge it as pretextual.

10

### 3. Evidence of Pretext

The burden now shifts to Plaintiff to provide sufficient evidence from which a reasonable jury could find Defendant's stated reason for his termination was pretext for discrimination. *See Brady*, 520 F.3d at 494; *Wheeler*, 812 F.3d at 1114 (finding that "only relevant inquiry here is whether [Plaintiff] produced sufficient evidence for a reasonable jury to conclude that [Defendant's] asserted nondiscriminatory reason for firing her was not the actual reason, and that instead [Defendant] was intentionally discriminating against [Plaintiff] on account of her race"). "A plaintiff can demonstrate that the employer's stated reason was 'not the actual reason' by 'produc[ing] evidence suggesting that the employer treated other employees of a different race [or of a significantly younger age] . . . more favorably in the same factual circumstances' or by showing that the employer 'is making up or lying about the underlying facts . . . .'" *Moses v. Kerry*, 110 F. Supp. 3d 204, 209 (D.D.C. 2015) (quoting *Brady*, 520 F.3d at 495) (brackets and ellipses in original), *aff'd,* No. 15-5241, 2016 WL 1272943 (D.C. Cir. Feb. 8, 2016).

Plaintiff asserts that "[t]he discrimination at issue occurred through May 5, 2017," Pl.'s Opp'n at 1, the date of his termination. With respect to race, he states that he "was the only male African American in his area on [the] shift" during which the jetbridge incident occurred. *Id*. Plaintiff maintains that he neither operated the jetbridge nor caused damage to the Republic aircraft, *see id*. at 2, notwithstanding his admission that he "was the person that met the inbound flight at [G]ate 44," Mounivong Decl., Ex. C. Plaintiff offers conclusory assertions without pointing to a declaration, affidavit or other competent evidence which would permit a reasonable jury to find in his favor.

11

An employee's lack of candor during an investigation is a legitimate nondiscriminatory reason for an adverse employment determination.  *See Tovihlon*, 323 F. Supp. 3d at 17 (noting that plaintiff was "terminated . . . for insubordination—which is a violation of [Employer's] Code of Conduct—and lying during the ensuing investigation").  Defendant points to evidence which a factfinder properly could consider at trial, *see Figueroa*, 923 F.3d at 108, and the nondiscriminatory reason it proffers is "facially credible in light of the proffered evidence," *id*. (citation and internal quotation marks omitted).  Without any evidence of any kind, however, Plaintiff neither rebuts Defendant's proffered reason for termination nor shows instead that Defendant intentionally discriminated against him on the basis of his race or sex.  Accordingly, the Court grants summary judgment for Defendant on the Title VII claim.

### D. Discrimination Based on Age

The ADEA mandates that "[a]ll personnel actions affecting [federal] employees . . . who are at least 40 years of age . . . shall be made free from any discrimination based on age."  29 U.S.C. § 633a(a).  Plaintiff is over 40 years of age, *see* Compl. at 1; Pl.'s Opp'n at 1, and is included in a protected class, *see Albert*, 2019 WL 4575525, at *3.  There is no dispute that his termination was an adverse employment action.

Adapting the approach taken in a Title VII case, "[a]t the summary judgment stage, the operative question is whether the employee produced sufficient evidence for a reasonable jury to find that . . . the employer intentionally discriminated against the employee on the basis of age." *Wilson v. Cox*, 753 F.3d 244, 247 (D.C. Cir. 2014) (citations and internal quotation marks omitted); *see DeJesus*, 841 F.3d at 532–33 (applying *Brady* to ADEA claims).  Defendant proffers that it terminated Plaintiff's employment for his lack of candor during the investigation

of the April 9, 2017 incident.  Plaintiff merely tosses in the phrase "age discrimination," Pl.'s Opp'n at 2, without producing any evidence suggesting that Defendant treated younger employees differently or showing that Defendant is lying about the underlying facts.

Absent any evidence from which a factfinder reasonably could conclude that the Defendant's explanation is pretextual, or that Plaintiff's age played any role in Defendant's decision, the Court grants summary judgment for Defendant on the ADA claim.  *See Jenkins v. District of Columbia*, 281 F. Supp. 3d 77, 87 (D.D.C. 2017) (granting summary judgment motion where plaintiff "provides no evidence supporting an inference that [employer's] hiring decision was based on age rather than legitimate reasons, [and therefore] cannot establish a material issue of triable fact with respect to her ADEA claim").

### E. Discrimination Based on Disability

Under the ADA, no covered employer "shall discriminate against a qualified individual on the basis of disability in regard to . . . [the] discharge of employees . . . and [the] privileges of employment."  42 U.S.C. § 12112(a).  As with a Title VII case, if a plaintiff has no direct evidence of discrimination based on his disability, the analysis proceeds under the *McDonnell Douglas* framework.  *See Duncan v. Wash. Metro. Area Transit Auth.*, 240 F.3d 1110, 1114 (D.C. Cir. 2001).  "To demonstrate discrimination in violation of the ADA . . . , the plaintiff 'must prove that he had a disability within the meaning of the ADA, that he was 'qualified' for the position with or without  a reasonable accommodation, and that he suffered an adverse employment action because of his disability.'"  *Giles v. Transit Employees Fed. Credit Union*, 794 F.3d 1, 5 (D.C. Cir. 2015) (quoting *Duncan*, 240 F.3d at 1114); *see Adeyemi*, 525 F.3d at 1226 ("[T]he two basic elements of a disability discrimination claim are that (i) the plaintiff

suffered an adverse employment action (ii) because of [his] disability.").  For purposes of the ADA, the term "disability" means "a physical or mental impairment that substantially limits one or more major life activities of such individual."  42 U.S.C. § 12102(1)(A).

Defendant moves for summary judgment on the ADA claim because Plaintiff "has not submitted any evidence to establish that he has a 'disability' as that term is defined by the ADA[.]"  Def.'s Mem. at 7 n.3.  Plaintiff responds that he "has been diagnosed with a Psychiatric Disability (stress disorder)" about which "management was aware[.]"  Pl.'s Opp'n at 2.  His responses to Defendant's discovery requests, *see generally* Def.'s Mem., Ex. 3, which Defendant describes as "of six pages of unsworn narrative, one blurry photograph, and one performance review," *id*. at 5, shed no light on this issue.

Even if Defendant were aware of Plaintiff's stress disorder, Plaintiff points to no evidence or materials in the record from which a reasonable jury could find that his stress disorder qualifies as a disability as the ADA defines the term.  If Plaintiff cannot show he has a disability, it follows that he cannot show Defendant ran afoul of the ADA by terminating him because of it.  Accordingly, the Court grants summary judgment for Defendant on the ADA claim.

**III. CONCLUSION**

Defendant has demonstrated that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law.  It has proffered a legitimate, non-discriminatory reason for having terminated Plaintiff's employment, and Plaintiff has failed to show that Defendant's proffered reason is pretext for discrimination.  Accordingly, the Court grants Defendant's motion for summary judgment.  An Order is issued separately.


Date: June 26, 2020                         /s/
                                            COLLEEN KOLLAR-KOTELLY
                                            United States District Judge

15